IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

EMPLOYERS' INNOVATIVE
NETWORK, LLC, et al.,

                Plaintiffs,

v.                                                   CIVIL ACTION NO. 5:18-cv-01082

BRIDGEPORT BENEFITS, INC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Employers' Innovative Network, LLC ("EIN") and Jeff Mullins' ("Mr. Mullins") (hereinafter the "Plaintiffs") *Motion to Remand* (Document 21) and *Memorandum of law in Support of Motion to Remand* (Document 22), Capital Security, Ltd. ("Capital Security"), Universal Risk Intermediaries, Inc. ("Unirisk") and Jeana Nordstrom ("Ms. Nordstrom") (collectively "Nordstrom Defendants") *Response of Defendants Capital Security, Ltd., Universal Risk Intermediaries, Inc. and Jeana Nordstrom to Plaintiffs' Motion to Remand* (Document 32). In addition, the Court has reviewed the Plaintiffs' *Complaint* (Document 1-4), and the *Notice of Removal* (Document 1) together with the exhibits. For the reasons stated herein, the Court finds that the motion should be denied.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

On April 2, 2018, the Plaintiffs filed a Complaint and Petition for Declaratory Judgment against Bridgeport Benefits, Inc. ("Bridgeport"), Capitol Administrators, Inc. ("Capitol

1

Administrators"), Capital Security, Lucent Health Solutions, Inc. ("Lucent"), Unirisk, Voluntary Benefits Specialist, LLC ("VBS"), Stephen Salinas, Wayne Blasman, Mike Tate, Alex Arnet, Ms. Nordstrom, and Casey Blasman.

The complaint alleges: unauthorized practice of insurance, breach of fiduciary duty, slander, negligence, breach of contract, fraud in the inducement, fraud in the performance, and civil conspiracy. The Plaintiffs allege that in 2016, EIN sought an insurance policy to cover its employees. Steven Nordstrom, then President of Capital Security and Unirisk, introduced EIN to Mr. Salinas, the Director of Benefits at Bridgeport, which is an insurance broker. Mr. Salinas and Wayne Blasman, the President of Bridgeport, offered to broker a policy for EIN with Capital Security, a Bermuda insurance company. The Plaintiffs allege that they informed the Defendants that the policy had to be fully insured and that the Defendants represented that the policy was a fully insured policy. EIN entered into the policy with the belief that they had no financial liability for claims under the plan after the payment of the monthly premiums, because Capital Security would be responsible for paying any claims that could not be paid by EIN's premiums. In November 2017, EIN switched insurance.

The Plaintiffs further allege that in early January 2018, Capitol Administrators, a company retained by Capital Security as a third-party administrator to administer claims on the policy, accidently sent EIN a report, which revealed over five million dollars of unpaid claims that Capitol Administrators did not pay, nor disclose to EIN. As a result of the report, EIN contacted Capital Security, who informed EIN that Capital Security was not responsible for the unpaid claims because the policy was self-insured, not fully insured. In January 2018, EIN alleges it was made aware that its employees, covered under the policy, were receiving third-party collection notices

for medical bills that were submitted to Capitol Administrators but had not been paid.[1] Finally, the complaint alleges that neither Bridgeport, Capitol Administrators, nor Capital Security are registered with the West Virginia Insurance Commission or licensed to conduct insurance business in the state.

On June 27, 2018, the Nordstrom Defendants, with the consent of the other Defendants, filed their Notice of Removal. The Notice of Removal was filed eight days after Ms. Nordstrom and Unirisk were served and five days after Capital Security was served. The Notice of Removal asserts that this Court has diversity jurisdiction over this matter because the amount in controversy exceeds $75,000, and because there is complete diversity amongst the Plaintiffs, who are citizens of West Virginia, and the Defendants, who are citizens of California, Bermuda, Delaware, Florida, Nevada, and Tennessee.

## STANDARD OF REVIEW

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a).[2] This Court has original jurisdiction of all civil actions between citizens of different states or between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds the sum or

---

1 The *Complaint* alleges that the Plaintiffs paid Capitol Administrators over four million dollars to ensure payment of the unpaid claims.

2 Section 1441 states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1)-(2). Generally, every defendant must be a citizen of a state different from every plaintiff for complete diversity to exist. Diversity of citizenship must be established at the time of removal. *Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441. Section 1446 requires that "[a] defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Additionally, Section 1446 requires a defendant to file a notice of removal within thirty (30) days after receipt of the initial pleading. It is a long-settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *Strawn et al. v. AT &T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted).

Accordingly, in this case, the removing defendant has the burden to show the existence of diversity jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W.Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481,488 (S.D. W.Va. 2001)). Where the amount in controversy is not specified in the complaint, the defendant must "demonstrate that it is more likely than not that the amount in controversy exceeds the jurisdictional amount."

4

*Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S. D. W. Va. 1996) (Copenhaver, J.) In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

## DISCUSSION

The Plaintiffs argue that the Nordstrom Defendants' Notice of Removal is defective because it does not demonstrate that it was timely filed or that there is complete diversity among the Plaintiffs and Defendants. Additionally, the Plaintiffs rely on various abstention doctrines to argue that the Court should abstain from hearing this case and remand it to state court. The Court will address each of these arguments.

*A. Alleged Defects in the Notice of Removal*

28 U.S.C. § 1446(b)(1) provides that:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(Emphasis added). "The receipt of an initial pleading starts the thirty-day period, however, only where the initial pleading reveals a ground for removal." *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 845 (S.D. W. Va. 2008) (*citing Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)) (Goodwin. J.). Courts must "rely on the initial pleading . . . to determine when the defendant had notice of the grounds for removal" and "requir[e] that those grounds be apparent within the four corners of the initial pleading." *Lovern*, 121 F.3d at 162.

5

The Plaintiffs argue that the Nordstrom Defendants cannot represent that the filing of the Notice of Removal was timely until the Defendants identify the first date that they received the Complaint, and further contend that the 30-day period begins to run upon receipt from any source. The Nordstrom Defendants argue that pursuant to 28 U.S.C § 1446(b) and the Supreme Court's decision in *Murphy Brothers Inc. v. Michetti Pipe Stringings, Inc.* 526 U.S. 334 (1999), the Notice of Removal was timely filed, because the Notice of Removal was filed within thirty (30) days of service.

In *Murphy Brothers,* the Supreme Court addressed "whether the named defendant must be officially summoned to appear in the action before the time to remove begins to run. Or, may the 30–day period start earlier, on the named defendant's receipt, before service of official process, of a 'courtesy copy' of the filed complaint faxed by counsel for the plaintiff?" 526 U.S. at 347. In answering that question, the Court held:

> We read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process. Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.

*Id.* at 347-48. In so holding, the Court looked at the legislative history of the amendment to Section 1446(b) that added the language, "or otherwise" to the statute. *See id.* at 351-54. The Court noted that "or otherwise" was added to the statute to address issues in states where service of the complaint was not required with service of summons, and defendants did not necessarily have access to the complaint before the removal period began. *Id*. at 351-52.

6

The record reveals that the Nordstrom Defendants filed their notice of removal on June 27, 2018, after Unirisk and Jeana Nordstrom were served with the Complaint via certified mail by the Secretary of State on or about June 19, 2018. As of June 22, 2018, Capital Security, Ltd., had not been served, but contends that they extended a professional courtesy to the Plaintiffs and waived service of process. The Plaintiffs' argument that the "Defendant cannot represent that filing of the Notice of Removal was timely until they identify the first date that they received a copy of the Complaint. . . from any source, including having it e-mailed from another defendant," demonstrates why the Supreme Court in *Murphy* did not distinguish between parties that have been served and those that have not. Pl. Br. at 9. "[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, *but not by mere receipt of the complaint unattended by any formal service*. *Id*. at 347-48 (emphasis added). Accordingly, the Court finds that the Nordstrom Defendants' Notice of Removal was timely filed.

Next, the Plaintiffs argue that the Defendants have not adequately proven that complete diversity exists between the parties. As previously stated, diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). Specifically, § 1332 provides that corporations are citizens of the states in which they are incorporated and of the states where the principal place of business is located, and limited liability companies are citizens of the states in which their members are citizens. *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Again, the burden of proving jurisdiction is on the party seeking removal. *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921). However, a defendant removing a

case to federal court under 28 U.S.C. §1446 is only required to allege federal jurisdiction with a short plain statement, until removal is challenged. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008).

The Plaintiffs make the general claim that the Defendants failed to properly address the citizenship of the parties with sufficient evidence. The Plaintiffs then argue that the Notice of Removal was defective because it failed to reference the citizenship of the individual members of Employee's Innovative Network and Voluntary Benefit Specialist, which are both limited liability companies. In *Ellenburg*, the Fourth Circuit held that cases being removed from state court to federal court are not held to a higher standard than cases which were filed in federal court, and only require a short plain statement alleging federal jurisdiction. *Id*. Here, the Defendant provided such a statement, by listing the citizenship of every party in the case and stating: "[a]ccordingly, there is complete diversity between Plaintiffs and Defendants." Notice of Removal ¶ ¶ 9-23. This is sufficient to overcome the Plaintiff's general claim.

As to the second argument, the Court finds that the Nordstrom Defendants have provided the Court with sufficient evidence that complete diversity exists. The Nordstrom Defendants attached documents from the West Virginia Secretary of State and the Nevada Secretary of State to their response to this motion, demonstrating that all of Employers Benefit Network, LLC's members are West Virginia residents and that all of Volunteer Benefits Specialist's members are residents of Nevada. (Document 32-1 and 32-2). Based on this evidence, the Court finds that the Nordstrom Defendants have met their burden of showing that this case meets the necessary diversity requirements for federal jurisdiction. Therefore, the Nordstrom Defendants' removal of this action is proper.

*B. Abstention*

Next, the Plaintiffs argue that even if removal is proper, the Court should refrain from exercising its jurisdiction over this matter and abstain from hearing the case. In support of this argument, the Plaintiffs invoke the so-called *Burford*, *Thibodaux,* and *Pullman* abstention doctrines, named for the Supreme Court cases that first discussed the principle that there may be cases in which a federal court should decline to consider a dispute even where it has jurisdiction. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Railroad Commission of Tex. v. Pullman,* 312 U.S. 496 (1941*); Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959). Abstention is recognized, *inter alia*, to avoid deciding a federal constitutional issue when the controversy might be disposed of by resolution of an unsettled area of state law (*Pullman*), to avoid needless conflicts with a state's administration of its own affairs (*Burford*), and to permit state resolution of unsettled questions of state law (*Thibodaux*).[3]

These abstention doctrines are rooted in the notion of federalism and that federal courts should refrain from hearing constitutional challenges to state action under circumstances where federal action might be impermissible intrusions into the right of a state to enforce its own laws. *See Gannett Co. v. Clark Const. Grp.*, Inc., 286 F.3d 737, 746 (4th Cir. 2002); *also see Club Ass'n of W. Virginia, Inc. v. Wise*, 156 F. Supp. 2d 599, 617 (S.D.W. Va. 2001) (Haden, J.). The concept of comity also factors into a federal court's decision to abstain. The Supreme Court has noted that the notion of comity is:

> "Proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

---

[3] Federal courts also abstain from hearing cases to avoid duplicative state and federal litigation, but that is not at issue here. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

*Younger v. Harris*, 401 U.S. 37, 44 (1971). Comity and federalism are embedded in all permutations of the abstention doctrines with the understanding that federal courts should respect the efforts of state governments to ensure uniform treatment of local issues. *Quackenbush v. Allstate Insurance Co.* 517 U.S. 706, 728 (1996).

"Abstention doctrines constitute an 'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction conferred on it." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (*quoting Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (internal quotation marks omitted)). It remains "the exception, not the rule." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 239 (1984) (*quoting Colorado River Water Conservation Dist.*, 424 U.S. at 813). As such, abstention is discretionary. *See First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002). The Court will now address each abstention doctrine in light of the allegations and circumstances presented.

    I.    *Burford*

The *Burford* abstention doctrine provides that:

> Courts should abstain from deciding cases presenting 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or whose adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*Id*. at 348 (4th Cir. 2002) (emphasis added) (*quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361 (1989) ("NOPSI")). If either is true, the Court should abstain from exercising jurisdiction.

First, the Court must evaluate whether this case presents a difficult question of state law bearing on policy problems of substantial public import whose importance transcends the result in

the case at bar. As an initial matter, at the core of this case, *inter alia*, is the unauthorized practice of insurance as articulated in W. Va. Code §33-44-4.[4] The Court is not persuaded that this case presents a policy problem that warrants *Burford* abstention. The Plaintiffs rely on *Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d. 710 (4th Cir. 1999), to argue otherwise, but their reliance is misplaced. In *Johnson*, the Fourth Circuit held that abstention was appropriate where suit under the federal Racketeer Influenced and Corrupt Organizations (RICO) act statute required the resolution of a difficult state law issue relating to South Carolina's video poker gambling, which was subject to extensive state regulation. 199 F.3d at 715, 720–23. The Fourth Circuit noted that

---

[4] W. Va. Code §33-44-4 states:

(a) It is unlawful for any person to engage in any act which constitutes the transaction of insurance under the provisions of this article unless authorized by a license in force pursuant to the laws of this state, or unless exempted by the insurance laws of this state. Any person or insurer engaged in any act which constitutes the unauthorized transaction of insurance shall be subject to the provisions contained in chapter thirty-three of the code and the provisions and penalties set forth in this article.

(b) It is unlawful for any person to, directly or indirectly, represent, aid, counsel, opine, administer, assist in any manner or capacity or otherwise act as an agent for or on behalf of an unauthorized insurer in the unauthorized transaction of insurance. Any person who represents, aids or assists, in any manner or capacity, an unauthorized insurer in violation of this article shall be subject to the provisions and penalties set forth in this article.

(c) An unauthorized insurer shall be bound by the terms of the insurance contract, certificate or agreement as if the contract, certificate or agreement were legally procured under the insurance laws of this state.

(d) This article does not apply to: (i) Any transaction for which a license is not required pursuant to section one, article three of this chapter, including the lawful transaction of surplus lines insurance and reinsurance by insurers; (ii) transactions in this state relative to a policy issued or to be issued outside this state involving insurance on cargo vessels, their craft or hulls, their cargoes, marine builder's risk, commercial marine protection and indemnity or other risk, including strikes and war risks commonly insured under ocean marine forms of policy; (iii) transactions in this state involving group life insurance, group accident and sickness insurance or group annuities providing coverage under policies that are recognized under articles fourteen and sixteen, respectively, of this chapter where: (1) The master policy of such groups was lawfully issued and delivered in and pursuant to the laws of a state in which the insurer was authorized to do an insurance business, to a group organized for purposes other than the procurement of insurance, and where the policyholder is domiciled or otherwise has a bona fide situs; and (2) except for group annuities, the insurer complies with section thirty-five, article six of this chapter. The commissioner may require the insurer which has issued such master policy to submit such information as the commissioner requires in order to determine if probable cause exists to convene a hearing to determine whether the total charges for the insurance to the persons insured are reasonable in relation to the benefits provided under such policy.

11

> "the district court contravened Burford principles by attempting to answer disputed questions of state gaming law that so powerfully impact the welfare of South Carolina citizens. Issues of state law and state public policy have dominated this action from day one. Most notably, the parties have contested the meaning of the $125 payout limit in S.C.Code Ann. § 12–21–2791. When the district court interpreted this provision, it was necessarily trying to predict how the South Carolina Supreme Court would decide the question.

*Id*. at 720. The *Johnson* Court further held that abstention was appropriate because South Carolina courts also retained jurisdiction over the plaintiff's federal claims and therefore could provide review of the relevant legal issues. *Id*. at 732.

Unlike the issue in *Johnson*, which implicated a controversial gambling statute, the issue at the core of this dispute, the alleged unauthorized practice of insurance, does not present a difficult state issue that warrants *Burford* abstention. As alleged in the complaint, this is a rather mundane contract dispute that involves the unauthorized practice of insurance. *See Quackenbush*, 517 U.S. at 729 (describing defendant's claim for setoff against insolvent insurer as "a run-of-the-mill contract dispute"). Additionally, the Court is not persuaded, nor do the Plaintiffs argue, that resolution of this case will transcend the case at bar. The Court is also not persuaded by the Plaintiffs' argument that abstention is appropriate simply because no state court has addressed the particular issue presented. The mere presence of an issue that requires the Court to interpret insurance regulations does not necessarily mean that resolution of the case violates the notions of federalism, which is at the heart of any abstention doctrine. *See Clark v. Milam,* 813 F. Supp. 431, 433–35 (S.D.W. Va. 1993) (Haden J.). This Court should not abstain from exercising its jurisdiction in this case based on the first prong of the *Burford* abstention doctrine.

Under the second prong of the *Burford* abstention doctrine, the Court must consider if it should abstain from exercising jurisdiction in this case if adjudication in a federal forum would

12

disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern. *First Penn-Pacific Life Ins. Co.* 304 F.3d at 348. The Court has no doubt that insurance is a matter of substantial concern. Moreover, the Court acknowledges that the insurance industry falls well within the core prerogative of West Virginia and is currently subject to an existing detailed state statutory scheme. With that in mind, however, the Court is not persuaded that resolution of this case would disrupt the state's efforts to establish a coherent policy. On the contrary, it appears that the state of West Virginia has a very well-established coherent policy with respect to insurance. This is borne out by the Plaintiffs' point informing the Court that "there are no state court cases addressing the application of . . . W. Va. Code §33-44-4," a statute that was enacted in 2001. Pl. Br. at 13. *See* UNAUTHORIZED INSURERS ACT—GENERAL AMENDMENTS, 2001 West Virginia Laws Ch. 158 (S.B. 504). Even if this point is correct, the Plaintiffs fail to demonstrate that resolution of this case, and interpretation of these statutes, would disrupt what appears to be settled law. Moreover, the Plaintiffs' assertions that a host of other West Virginia insurance laws *may* be implicated by this Court's exercise of jurisdiction, without explanation, is not sufficient to warrant *Burford* abstention. As the Court stated above, abstention is rare and discretionary. The presence of state law and the adequacy of state proceedings can be used only in *rare circumstances* to justify abstention. *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 746 (4th Cir. 2002) (quotations and citations omitted) (emphasis added). The facts in this case do not present one of those rare circumstances. Therefore, the Court finds that Burford abstention is inappropriate.

*II.    Thibodaux*

Next, the Plaintiffs invoke the *Thibodaux* abstention doctrine and urge the Court to abstain from exercising jurisdiction in this matter. Under the Thibodaux abstention doctrine, a district court may abstain from exercising diversity jurisdiction to avoid deciding an unclear and important issue of state law bearing upon sovereign prerogative. *Thibodaux, 360 U.S. at 27–28.* The Plaintiffs argue that because there are no reported state law cases interpreting or applying § 33-44-10, the law is inherently unclear.[5] The Plaintiffs also argue that if this Court interprets this statute then it will have a broad impact on state policy, since insurance is heavily regulated.

The *Thibodaux* case involved eminent domain issues. The Supreme Court stated that when a case involves the relationship between city and state or the reach of an uninterpreted state statute that is "of questionable constitutionality," federal district courts have been required to stay the proceedings pending a state court determination of the state law issues. *Id.* at 27-28. The Supreme Court expounded on *Thibodaux* in *Quackenbush*, holding that, in cases seeking damages

---

[5] W. Va. Code § 33-44-10 states:

(a) Before any unauthorized insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, or any notice, order, pleading or process in an administrative proceeding before the commissioner instituted against the insurer, the unauthorized insurer shall either:

(1) Deposit with the clerk of the court in which the action, suit or proceeding is pending, or with the commissioner in an administrative proceeding, cash or securities or file with the clerk or the commissioner a bond with good and sufficient sureties, to be approved by the court or the commissioner, in an amount to be fixed by the court or commissioner sufficient to secure the payment of any final judgment which may be rendered in the action or administrative proceeding; or

(2) Deposit with the clerk of the court in which the action, suit or proceeding is pending, or with the commissioner in an administrative proceeding, cash or securities or file with the clerk or the commissioner a bond with good and sufficient sureties, to be approved by the court or the commissioner, in an amount required to procure a license to transact insurance in this state pursuant to the provisions contained within article three of this chapter. (b) The court or the commissioner in any action, suit or proceeding in which service is made in the manner provided in subsection (d) or (e), section five of this article, may, in its, his or her respective discretion, order the postponement as may be necessary to afford the responding party reasonable opportunity to comply with the provisions of subsection (a) of this section and thereafter to defend the action or proceeding.

14

as relief, district courts may stay these actions based on abstention, but outright dismissal or remand is not appropriate. 517 U.S. at 706 (citing *Thibodaux*, 360 U.S. at 28). There simply are no issues presented here involving unclear and important issues of state law bearing on sovereign prerogative. Further, in its complaint, the Plaintiff seeks compensatory as well as punitive damages. As such, *Thibodaux* abstention would not be appropriate even if the appropriate state law issues were presented, since the Supreme Court has specifically held that remand or outright dismissal is not appropriate where damages are sought.

      III.    *Pullman*

Finally, the Court finds that the Plaintiffs' reliance on the *Pullman* abstention doctrine is inapplicable. "Pullman abstention ... is appropriate where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question." *Club Ass'n of W. Virginia, Inc. v. Wise*, 156 F. Supp. 2d at 618 (*quoting Meredith v. Talbot County,* 828 F.2d 228, 231 (4th Cir. 1987). Here, there is no federal constitutional issue raised. The Plaintiffs make a hollow argument that the Defendants "appear to raise a constitutional issue with W. Va. Code § 33-44-10 by stating that its application may prohibit their access to the courts," but the Court finds that no such constitutional issue is present beyond the assertion made in the Plaintiffs' brief. (Pl. Br. at 16). If such a constitutional issue existed, the Plaintiffs have not shown that the state law in question is 'unsettled' such that the Court should abstain.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the Plaintiff's *Motion to Remand* (Document 21) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 11, 2019

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA