# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

EMPLOYERS' INNOVATIVE
NETWORK, LLC, et al.,

                Plaintiffs,

v.                                     CIVIL ACTION NO. 5:18-cv-01082

BRIDGEPORT BENEFITS, INC., et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed Defendants Capitol Administrators Inc. ("Capitol Administrators), Lucent Health Solutions, Inc. ("Lucent"), Mike Tate and Alex Arnet's (collectively the "Capitol Administrators Defendants'") *Renewed Motion to Set Aside Default* (Document 9), *Plaintiffs' Response in Opposition to Renewed Motion to Set Aside Default* (Document 10), Defendants Capital Security, Ltd. (Capital Security), Universal Risk Intermediaries, Inc. (Unirisk), and Jeana Nordstrom's (collectively the "Nordstrom Defendants') *Motion to Set Aside Default* (Document 15), and the *Plaintiffs' Response in Opposition to Motion to Set Aside Default* (Document 26). The Court has also reviewed the Capitol Administrators Defendants' *Renewed Motion to Extend Time to Answer* (Document 8), the Plaintiffs' *Complaint and Petition for Declaratory Judgment* (Document1-4), the *Amended Defenses and Answer of Capitol Administrators, Inc., Mike Tate, Alex Arnet and Lucent Health Solutions, Inc. and Counterclaim and Cross-claim* (Document 5),

1

the *Plaintiffs' Rule 12(f) Motion to Strike Amended Defense and Answers of Capitol Administrators Inc., Mike Tate, Alex Arnet and Lucent Health Solutions, Inc., and Counterclaim and Cross-Claim.* (Document 13) and the *Motion for Leave of Defendants Capital Security, Ltd., Universal Risk Intermediaries Inc., and Jeana Nordstrom, to File Motion to Dismiss Complaint* (Document 16). For the reasons stated herein, the Court finds that both motions to set aside default should be granted, the motion for leave to file the motion to dismiss should be granted, the motion to extend time to answer should be granted, and the motion to strike should be denied.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

*A. The Wyoming County Circuit Court Proceedings*

On April 2, 2018, the Plaintiffs, Employers' Innovative Network, LLC (EIN) and Jeff Mullins, filed a Complaint and Petition for Declaratory Judgment against the Capitol Administrators Defendants, the Nordstrom Defendants, Bridgeport Benefits, Inc. ("Bridgeport"), Voluntary Benefits Specialists, LLC ("VBS"), Stephen Salinas, Wayne Blasman, and Casey Blasman.

The complaint alleges unauthorized practice of insurance, breach of fiduciary duty, slander, negligence, breach of contract, fraud in the inducement, fraud in the performance, and civil conspiracy. The Plaintiffs allege that in 2016, EIN sought an insurance policy to cover its employees. Steven Nordstrom, then President of Capital Security and Unirisk, introduced EIN to Mr. Salinas, the Director of Benefits at Bridgeport, which is an insurance broker. Mr. Salinas and Wayne Blasman, the President of Bridgeport, offered to broker a policy for EIN with Capital Security, a Bermuda insurance company. The Plaintiffs allege they informed the Defendants that

the policy had to be fully insured and that the Defendants represented that it was a fully insured policy. EIN accepted the policy with the belief that it had no financial liability for claims under the plan after the payment of the monthly premiums, because Capital Security would be responsible for paying any claims that could not be paid with EIN's premiums. In November 2017, EIN switched insurance.

Capital Security retained Capitol Administrators as a third-party administrator to administer claims on the policy. The Plaintiffs allege that in early January 2018, Capitol Administrators accidentally sent EIN a report revealing over five million dollars of unpaid claims that Capitol Administrators neither paid nor disclosed to EIN. As a result of the report, EIN contacted Capital Security, which informed EIN that it was not responsible for the unpaid claims because the policy was self-insured, not fully insured. In January 2018, EIN alleges it was made aware that its employees, covered under the policy, were receiving third-party collection notices for medical bills that were submitted to Capitol Administrators but had not been paid.[1] Finally, the complaint alleges that Bridgeport, Capitol Administrators, and Capital Security are not registered with the West Virginia Insurance Commission or licensed to conduct insurance business in the state.

The Capitol Administrators Defendants' answer or responsive pleading was due by May 3, 2018, but on May 3, 2018, counsel for the Capitol Administrators Defendants filed a motion for an extension of time to file an answer, which the Plaintiffs opposed on May 9, 2018.[2] On June 7,

---

1 The *Complaint* alleges that the Plaintiffs paid Capitol Administrators over four million dollars to ensure payment of the unpaid claims.

2 Counsel for the Capitol Administrator Defendants requested an extension in part because of the passing of his

2018, the Wyoming County Circuit Court Clerk entered default against the Capitol Administrators Defendants. On June 8, 2018, the Capital Administrators Defendants filed an answer and requested an extension of time through June 8, 2018. On June 13, 2018, the state court held a hearing to address the entry of default, but the case was removed prior to the issuance of a ruling.

   B. *Federal Court Proceedings*

On June 27, 2018, the Nordstrom Defendants removed this case pursuant to 28 U.S.C §§ 1332, 1441 and 1446. In the notice of removal, the Nordstrom Defendants alleged that the action may be removed to this Court "because it is a civil action between citizens of different states wherein the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and cost." (Document 1-6, ¶¶ 7-8). On June 29, 2018, the Capitol Administrators Defendants filed an answer as well as a counterclaim and cross-claim to the complaint. On July 3, 2018, the Capitol Administrators Defendants filed a renewed motion to extend time to answer the complaint and a renewed motion to set aside the default entered in state court.[3] On July 17, 2018, the Plaintiffs filed a motion for entry of default against the Nordstrom Defendants as well as a motion to strike the Capitol Administrators Defendants' answer, counterclaim and cross-claim. On July 18, 2018, the Clerk for this Court entered a default against the Nordstrom Defendants.

---

mother, and before this matter was removed to this Court, the Capitol Administrators Defendant retained new counsel and the state court issued an Order granting substitute counsel.

3  The Capitol Administrators Defendants' *Renewed Motion to Extend Time to Answer* (Document 8) appears to have a typographical error. The Capitol Administrators Defendants state that they filed their answer on June 29, 2018, but only request an extension until June 19, 2018 for the filing to be considered timely. The Court has reviewed the motion as a request to have an extension until June 29, 2018.

On July 27, 2018, the Plaintiffs filed a motion to remand the case to the Circuit Court of Wyoming County, which the Nordstrom Defendants opposed on August 10, 2018.[4] The Court denied the motion and found that the Court has jurisdiction over the case, and further found that abstention was inappropriate. (Document 66). Now that the Court has addressed the motion to remand, the Court will address the entry of default in state court against the Capitol Administrators Defendants, the entry of default entered in this Court against the Nordstrom Defendants, and motions related to the Defendants' answers to the complaint.

**STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a court may set aside an entry of default for good cause or pursuant to Rule 60(b). Fed. R. Civ. P. 55(c). The Fourth Circuit has established that district courts should consider the following factors when considering motions to set aside default pursuant to Rule 55(c): "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). It has also "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

---

4 On August 10, 2018, Mr. Arnet, Capitol Administrators, Lucent, and Mr. Tate joined the Nordstrom Defendants' response in opposition. That same day, Casey Blasman, Wayne Blasman, Bridgeport, Mr. Salinas and VBS also joined the response. (Document 35 and 36)

## DISCUSSION

*A. The State Entry of Default Against the Capitol Administrators Defendants*

First, the Court will address the Capitol Administrators Defendants' motion. The Wyoming Court Circuit Court Clerk entered default against the Capitol Administrators Defendants. Before the motion to set aside default was resolved in state court, the case was removed to this Court.

As an initial matter, the Court must determine whether to apply state or federal law, since default was entered in state court before the case was remanded to this Court.[5] This invokes issues of *Erie R. Co. v. Tompkins*, which requires a federal court sitting in diversity to apply the substantive law of the state while applying federal procedural law. 304 U.S. 64, 78 (1938). It is clear to the Court that W. Va. R. Civ. P. 55 is procedural in nature. An entry of default is

---

5 W. Va. R. Civ. P. 55(c) states:

"Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

W. Va. R. Civ. P. 60(b) states:

"**(b) Mistakes; Inadvertence; Excusable Neglect; Unavoidable Cause; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

procedural in nature because it is interlocutory, and a mechanism to provide notice to the defaulting party *before* a court enters a default judgment. *Carbon Fuel Co. v. USX Corp.*, 1998 WL 480809 *1, *3 (4th Cir. 1998) (unpublished) (citing 10A Charles Allen Wright et al., FEDERAL PRACTICE & PROCEDURE § 2692 (3rd ed.1998)). The judgment is not final until the non-defaulting party moves for a default judgment. *Id*. Since the issue is procedural, the Court finds that Fed. R. Civ. P. 55(c) applies. Thus, the Court will examine the *Payne* factors in determining whether to set aside the entry of default.[6]

1. *Meritorious Defense*

The Capitol Administrators Defendants argue that they have a meritorious defense to the claim. (Document 9, ¶ 18). Specifically, they assert that "Plaintiffs' allegations of fault are disputed and denied," and further allege that "Plaintiff, EIN and Defendant Capital Security have both agreed to indemnify and hold harmless [Capitol Administrators] from any and all actions, causes of action, claims, demands, liabilities, damages, costs and expenses . . .." (Capitol Administrators Defs.' Renewed Mot. to Set Aside Default ¶ 18). The Plaintiffs respond that the answer contains boilerplate defenses and general denials, which they contend do not amount to a genuine material defense. In the alternative, they argue that even if the answer is sufficient to be considered a meritorious defense, the answer should be stricken, because it was not filed in

---

6 The Plaintiffs chose not to address the *Payne* factors, and instead argued the factors a West Virginia state court is to consider when setting aside an entry of default. However, the Court has considered their arguments and applied them to the *Payne* factors where appropriate.

compliance with W. Va. Code § 33-44-10, which requires an unauthorized insurer to pay a fee before filing a pleading.[7]

The Plaintiffs' general assessment of the defenses presented in the Capitol Administrators Defendants' answer does not negate the merit of the defenses. Here, the answer provides affirmative defenses and responses to every allegation pled in the complaint. A claimant's alleged defense in an answer need not be proven at this stage of the case for it to be "meritorious" for purposes of the Court's determination. *Wainwright's Vacations, LLC v. Pan Am. Airways, Corp.*, 130 F.Supp.2d 712, 718 (D. Md. 2001) ("[T]he moving party does not have to prove conclusively that he would prevail, only that there is sufficient evidence to permit a court to find in his favor."). "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 812 (4th Cir.1988). In fact, even if the Capitol

---

7 W. Va. Code § 33-44-10 states:

(a) Before any unauthorized insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, or any notice, order, pleading or process in an administrative proceeding before the commissioner instituted against the insurer, the unauthorized insurer shall either:

(1) Deposit with the clerk of the court in which the action, suit or proceeding is pending, or with the commissioner in an administrative proceeding, cash or securities or file with the clerk or the commissioner a bond with good and sufficient sureties, to be approved by the court or the commissioner, in an amount to be fixed by the court or commissioner sufficient to secure the payment of any final judgment which may be rendered in the action or administrative proceeding; or

(2) Deposit with the clerk of the court in which the action, suit or proceeding is pending, or with the commissioner in an administrative proceeding, cash or securities or file with the clerk or the commissioner a bond with good and sufficient sureties, to be approved by the court or the commissioner, in an amount required to procure a license to transact insurance in this state pursuant to the provisions contained within article three of this chapter. (b) The court or the commissioner in any action, suit or proceeding in which service is made in the manner provided in subsection (d) or (e), section five of this article, may, in its, his or her respective discretion, order the postponement as may be necessary to afford the responding party reasonable opportunity to comply with the provisions of subsection (a) of this section and thereafter to defend the action or proceeding.

Administrators Defendants' defenses are tenuous, the "meritorious defense" factor should weigh in favor of granting a motion to set aside entry of default. *See Rasmussen v. Am. Nat'l Red Cross*, 155 F.R.D. 549, 552 (S.D. W. Va. 1994) (Haden, C.J.) ("Although the Court finds the Defendant's 'meritorious defense' argument tenuous, it nonetheless recognizes the general policy of deciding cases on their merits."). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F .2d 725, 727 (4th Cir.1982). Therefore, under the circumstances presented here, the Court finds that the answer is a sufficient proffer of "evidence" to establish that the Capitol Administrators Defendants have presented a meritorious defense.

The Plaintiff's argue that to avoid issues with *Erie*, the Court should apply state law and strike the Capitol Administrators Defendants' answer because it was filed in violation of W. Va. Code § 33-44-10. On its face, W. Va. Code § 33-44-10 appears to be procedural because it clearly lays out how an unauthorized insurer is to proceed in West Virginia state courts. However, the Plaintiffs argue, albeit implicitly, that W. Va. Code § 33-44-10 is a substantive state law that this Court should be bound by because it is hearing this case upon removal pursuant to its diversity jurisdiction.

The Court must determine whether to apply this state statute or the federal rule. The seminal case addressing this question is *Hanna v. Plumer*, 380 U.S. 460 (1965). In *Hanna,* the court held that when both a state law and a federal rule are potentially applicable, a district court must determine whether the state provision conflicts with the federal rule. *Id.* at 471. If a conflict

9

exists, the court must apply the federal rule unless it is beyond the scope of the Rules Enabling Act, the law which gave the judiciary the power to promulgate the federal rules or is unconstitutional.[8] *Id.* Here, the issue the Court faces is whether to apply W. Va. Code § 33-44-10 or Federal Rule 5(d)(1)(A), which governs the serving and filing of pleadings.

In *Hanna*, an Ohio citizen filed a diversity action in Massachusetts federal court as a result of injuries caused by a Massachusetts citizen. *Id.* at 461. Service was at issue in the case. The defendant argued that state law required in-hand service, and the plaintiff argued that the state law was not applicable, but that Fed. R. Civ. P. 4 applied. *Id*. at 461-62. In holding that the federal rule applied, the Supreme Court reasoned that the federal rule was broad enough to cover the issue presented and noted that Rule 4 was "designed to control service of process in diversity actions." *Id*. at 463. The *Hanna* Court looked at whether the federal or state rules apply in a diversity case. The Supreme Court relied on the power granted to federal courts by Congress in the Rules Enabling Act and held that the federal rule controlled, and an *Erie* analysis was not required. *Id*. at 463-4, 471. "The [*Erie*] rule has never been invoked to void a Federal Rule" *Id*. at 470. As such, the

---

8 The Rules Enabling Act states:

> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.
>
> (b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.
>
> (c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

28 U.S.C § 2072.

10

rule from *Hanna* is that when an issue is addressed by a federal rule, but is silent on a requirement under state law, the federal rule controls. Federal Rule 5(d)(1)(A) is silent as to the requirement of WV Code 33-44-10 that an unauthorized insurer pay a fee or post bond before filing a pleading but was drafted to control how parties make filings in federal courts in response to a complaint.[9]

> "When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie Choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."

*Id.* at 471.

Under *Hanna*, the Court must first determine if the federal rule is broad enough to resolve the conflict between the state law and the federal rule. Rule 5(d)(1)(A) governs any papers, including pleadings filed after a complaint. Here, the Defendants have served and filed an answer to a complaint which falls squarely under Rule 5(d)(1)(A). Although Rule 5(d)(1)(A) is silent as to the requirement of cash or bond for an unauthorized insurer to file a pleading, it clearly requires that *any paper* after a complaint be filed and served with no exceptions. In keeping with the Supreme Court's guidance in *Hanna*, the Court finds that this procedural requirement in the federal rule is both broad and clear enough to control in this case. Moreover, the Court in *Hanna* found

---

9 Fed. R. Civ. P. 5(d)(1)(A) states:

*Papers after the Complaint.* Any paper after the complaint that is required to be served must be filed no later than a reasonable time after service. But disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission.

that applying the federal rule was appropriate even when the outcome would be different under state rules, because of the federal judiciary's "strong inherent power" to "bring about uniformity in the federal courts." *Hanna*, 380 U.S. at 472-3.

The second prong of the holding from *Hanna* created a caveat: a rule would not apply if its promulgation exceeded its authority under the Rule Enabling Act. *Id.* at 471. In the absence of any argument to the contrary, however, the Court must rely on the "presumptive validity" afforded to the federal rules because of "the study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, [the Supreme] Court, and the statute requirement that the Rule be reported to Congress for a period of review before taking effect." *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 6 (1987). After consideration of the applicable law, the Court finds that the federal rule governing pleadings is applicable to this case.

2. *Reasonable Promptness*

The Capitol Administrators Defendants contend that they have responded with reasonable promptness and note that they worked with the Plaintiffs to resolve two petitions for temporary restraining orders, as well as filing their motions and answer to the complaint. The Plaintiffs argue that the Capitol Administrators Defendants were the cause of delay in the case and note they failed to meet the deadline which they, themselves, had requested in a motion for an extension. The Court must determine if a party acted reasonably promptly to set aside an entry of default "in light of the facts and circumstances of each occasion." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The Fourth Circuit has held that a movant "did not act promptly" by filing a motion to set aside an entry of default approximately two and one-half months after the default

was entered. *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). In a case in which a motion to set aside a default was filed two months after the entry of default, a judge in this district found the movant did not act with reasonable promptness. *Cobb v. Equifax Info. Servs.*, No. 2:18-CV-00992, 2018 WL 6313011, at *2 (S.D. W. Va. Dec. 3, 2018) (Goodwin, J.). In making such finding, the court noted that:

> District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside. *See United States v. $10,000.00 in U.S. Currency*, No. 1:00-cv-0023, 2002 WL 1009734, at *3 (M.D.N.C. Jan. 29, 2002); *Esteppe v. Patapsco & Back Rivers R.R. Co.,* No. H-00-3040, 2001 WL 604186, at *4 (D. Md. May 31, 2001); *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.,* 130 F. Supp. 2d 712, 718 (D. Md. 2001).

*Id.* Here, default was entered in the state court on June 7, 2018, and the motion to set aside the default was filed in state court on June 11, 2018. After the case was removed on June 27, 2018, the Defendants renewed their motion to set aside default on July 3, 2018. The Court finds that the Capitol Administrators Defendants' response to the entry of default was, in fact, prompt.

3. *Personal Responsibility*

The *Payne* factor of personal responsibility of the defaulting party weighs heavily in favor of the Capitol Administrators Defendants. Importantly, the Fourth Circuit has recognized that attorney inaction, without some sort of attendant fault of the defendant, personally, leads to a finding of no *personal* responsibility of the defaulting party. *See, e.g., Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951, 953 (4th Cir.1987) ("[J]ustice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings.... Any dilatory action was on the part of the attorney, not the defendants. . .."

(internal quotation marks omitted)). Nothing in the record suggests that the Capitol Administrators Defendants were the cause of any delay which resulted in the entry of default or the response to the entry.

   4. *Prejudice*

The Court finds that vacating the default judgment will not prejudice the Plaintiffs. The Court notes that the parties are still in the discovery phase of the case. Moreover, "[i]n the context of a motion to set aside an entry of default, . . . delay in and of itself does not constitute prejudice to the opposing party." *Colleton Preparatory Acad.*, 616 F.3d at 418. No other *actual* prejudice has been presented. The Court finds that a review of the merits in this case would best serve the interests of justice for all parties concerned.

   5. *History of Dilatory Action*

Further, nothing in the record indicates any previous history of dilatory action by the Capitol Administrators Defendants, and the Plaintiffs have not asserted that there is a history of dilatory action.

   6. *Less Drastic Sanctions*

Finally, the Court considers the availability of less drastic sanctions as an alternative to the entry of default. The Capitol Administrators Defendants argue that no sanction is warranted because despite the entry of default, they have been engaged in the matter from the onset. The Plaintiffs have not suggested or sought an alternative sanction, and the Court will not consider alternative sanctions that have not been requested. The relatively minimal delays involved in this case clearly do not warrant default as a sanction.

In sum, the Capitol Administrators Defendants have articulated a meritorious defense, have responded with reasonable promptness, are not personally responsible for the delay, and no evidence of a history of dilatory action has been presented. Further, Plaintiffs are not prejudiced by the delay and although lesser sanctions are available, imposing sanctions is not appropriate under the circumstances presented here. Accordingly, the Court finds that the state court default should be set aside.

B. *The Entry of Default Against the Nordstrom Defendants*

On July 18, 2018, default was entered against the Nordstrom Defendants. Unlike the default entered against the Capitol Administrators Defendants in state court, this default was entered by the Clerk of this Court. Despite this fact, the Plaintiffs chose to ignore the *Payne* factors and instead argued that this Court should follow W. Va. Code § 33-44-10. Clearly, the state statute isn't applicable where the default was entered in federal court.

Applying the *Payne* factors, the Court notes that the Nordstrom Defendants have not filed an answer to the complaint but have filed a Motion for Leave to File a Motion to Dismiss and attached a Motion to Dismiss as well as a Memorandum of Law (Document 16), wherein they argue that this claim should be dismissed because it is subject to arbitration. As to the second *Payne* factor, the Nordstrom Defendants argue and the record reveals that they were reasonably prompt about responding to the default entry. Two days after the default entry, the Nordstrom Defendants filed their motion to dismiss. Nothing in the record indicates that there was a delay in responding to the entry of default. Therefore, the Court does not need to analyze whether to assign any personal responsibility to the Nordstrom Defendants. As to the fourth *Payne* factor,

the Court finds that the Plaintiffs would suffer no prejudice if the default is set aside. The parties are still in the discovery phase of the litigation. Even if there is a minimal risk of prejudice, it is offset and outweighed by the legal preference for resolving cases on the merits. Further, there is nothing in the record that suggests the Nordstrom Defendants have a history of dilatory conduct. Finally, because a review of the five *Payne* factors points toward setting aside default against the Nordstrom Defendants, it is inappropriate to levy a sanction.

C. *Plaintiffs' Rule 12(f) Motion to Strike the Counterclaim and Cross Claim*

Lastly, the Plaintiffs filed a motion to strike the Capitol Administrators amended answer, counterclaim, and crossclaim. First, the Plaintiffs argue that since the Capitol Administrators Defendants are in default, they cannot contest liability. The Court can quickly dispose of this argument, because the Capitol Administrators Defendants are no longer in default, for the reasons stated above, and pursuant to the Order below. Next, the Plaintiffs argue that W. Va. Code § 33-44-10 bars the Capitol Administrators Defendants from filing any pleadings. The Court has discussed why it is not obligated to adhere to this state statute. The motion to strike should be denied.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Capitol Administrators Defendants' *Renewed Motion to Set Aside Default* (Document 9), the Nordstrom Defendants' *Motion to Set Aside Default* (Document 15) **AND** *Motion for Leave of Defendant's Capital Security, Ltd., Universal Risk Intermediaries Inc., and Jeana Nordstrom, to File Motion to Dismiss Complaint* (Document 16) be **GRANTED** and that the attached motion to

dismiss be **FILED.** The Court further **ORDERS** that the *Renewed Motion to Extend Time to Answer* (Document 8) be **GRANTED** and, lastly, that the *Plaintiffs' Rule 12(f) Motion to Strike Amended Defense and Answers of Capitol Administrators Inc., Mike Tate, Alex Arnet and Lucent Health Solutions, Inc., and Counterclaim and Cross-Claim.* (Document 13) be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 25, 2019

*[signature: Irene C. Berger]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA