## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BECKLEY

EMPLOYERS' INNOVATIVE
NETWORK, LLC, et al.,

                Plaintiffs,

v.                                        CIVIL ACTION NO. 5:18-cv-01082

BRIDGEPORT BENEFITS, INC., et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are Defendants Capital Security, Ltd., Universal Risk Intermediaries, Inc., and Jeana Nordstrom (the "Nordstrom Defendants") and Defendants Bridgeport Benefits, Inc., Voluntary Benefit Specialists LLC, Stephen Salinas, Wayne Blasman, and Casey Blasman's (the "Bridgeport Defendants") Joint Motion to Retain Case on Active Docket for the Purposes of Confirming, Recognizing, and Enforcing Arbitration Awards [Doc. 253] and Joint Motion to Confirm, Recognize, and Enforce Arbitration Awards [Doc. 254], both filed June 2, 2023. Plaintiffs Employers' Innovative Network, LLC, and Jeff Mullins responded in opposition to Defendants' motions on June 16, 2023. [Docs. 256, 257]. Defendants filed a Joint Reply on June 21, 2023. [Doc. 258]. The Bridgeport Defendants filed a separate reply [Doc. 259] on June 21, 2023, and the Nordstrom Defendants filed a separate reply [Doc. 260] on June 22, 2023. The matters are ready for adjudication.

## I.

On April 2, 2018, Plaintiffs instituted this action against Defendants in the Circuit

Court of Wyoming County. They alleged the unauthorized practice of insurance, breach of fiduciary duty, slander, negligence, breach of contract, fraud in the inducement, fraud in the performance, and civil conspiracy. [Doc. 1 Ex. 4]. The Nordstrom Defendants removed on June 27, 2018. [*Id.*].

On July 17, 2018, Plaintiffs filed a Motion for Entry of Default against the Nordstrom Defendants. [Doc. 12]. The Clerk entered a default against the Nordstrom Defendants on July 18, 2018. [Doc. 14]. On July 20, 2018, the Nordstrom Defendants filed a Motion to Set Aside Default [Doc. 15], along with a proposed Motion to Dismiss and request to compel arbitration [Doc. 16].

On February 25, 2019, the Court granted the Nordstrom Defendants' Motion to Set Aside Default. [Doc. 67]. That same day, the Nordstrom Defendants filed a Memorandum of Law in support of their Motion to Dismiss and request to compel arbitration [Doc. 69]. Plaintiffs responded on March 11, 2019 [Doc. 74]. The Nordstrom Defendants replied on March 31, 2019. [Doc. 82].

On August 2, 2019, the Court granted the Nordstrom Defendants' Motion to Dismiss and referred the parties to arbitration in Bermuda pursuant to the parties' Client Service Agreement. [Doc. 216]. In response, the Bridgeport Defendants moved to have the entire matter referred to arbitration on equitable estoppel grounds. [Doc. 220]. Plaintiffs replied in opposition. [Doc. 222].

On September 16, 2019, Plaintiffs filed a Motion to Reconsider the August 2, 2019, Order. [Doc. 227]. Plaintiffs claimed the Nordstrom Defendants waived their right to arbitration by engaging in discovery and behaving inconsistently with their professed desire to arbitrate. [*Id.*]. On September 17, 2019, the Court denied the Motion to Reconsider inasmuch as Plaintiffs, without

good cause, failed to seasonably raise the waiver argument. [Doc. 228]. Plaintiffs then withdrew their opposition to the Bridgeport Defendants' participation in arbitration. [Doc. 230]. On October 18, 2019, the Court referred the entirety of the dispute to the Bermuda arbitral forum and stayed the case "pending arbitration." [Doc. 231].

On January 20, 2022, Bermudian Arbitrator Delroy Duncan entered his decision in favor of the Defendants. [Doc. 254 Ex. 3]. Although the arbitral decision was entitled "Final Award," Mr. Duncan reserved ruling on the issue of attorney fees and costs. [*Id.*]. On January 22, 2022, Plaintiffs were served the Final Award. [Doc. 244 at 1 n.2].

Thereafter, Plaintiffs discovered an undisclosed lawsuit in which arbitration counsel for the Nordstrom Defendants, Keith Robinson and Sam Stevens, were simultaneously pursuing an $18,000,000 claim against Mr. Duncan's Bermuda law firm ("Robinson/Stevens lawsuit"). [Doc. 248 at 1]. Plaintiffs also discovered that Katie Tornari, Vice-Chair of the Chartered Institute of Arbitrators, Bermuda Branch ("CIA-BB") -- the entity which appointed Mr. Duncan -- was representing Mr. Duncan's firm in the Robinson/Stevens lawsuit. [*Id.* at 2]. When requested, Mr. Duncan allegedly failed to provide information regarding the Robinson/Stevens lawsuit and the resulting potential conflict of interest. [Doc. 257 at 16]. Plaintiffs then filed a "Notice of Arbitrator Challenge" with Mr. Duncan pursuant to the governing procedural rules.[1] [Doc. 248 at 2; *Id.* Ex. 2]. On April 19, 2022, Mr. Duncan rejected the challenge, and refused to withdraw from the proceedings. [*Id.* Ex. 4].

---

[1] Per the parties' Client Service Agreement, the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules "presently in force" governed the arbitration proceedings herein. [Doc. 68 Ex. 3 at 6 ¶ 13]. Article 13(4) of the UNCITRAL Arbitration Rules provides, "If[] . . . the challenged arbitrator does not withdraw, the party making the challenge . . . [may,] within 30 days from the date of the notice of challenge, . . . seek a decision on the challenge by the appointing authority." *Id.*

On May 4, 2022, Plaintiffs appealed Mr. Duncan's decision to the CIA-BB. [Doc. 257 at 6]. On September 21, 2022, the CIA-BB denied Plaintiffs' appeal. [Doc. 250].[2] It concluded Mr. Duncan's failure to disclose the conflict was "[un]likely to give rise to justifiable doubts as to Mr. Duncan's impartiality and independence" because "despite his reputation as an honest and ethical individual," he had no reason to believe the Nordstrom Defendants' counsel would act inappropriately. [*Id.* at 4].

On April 21, 2022, Plaintiffs filed a Motion to Set Aside Final Arbitration Award [Docs. 243, 244]. On January 17, 2023, the Court denied Plaintiffs' Motion to Set Aside Final Arbitration Award, finding (1) no final arbitration award had been entered inasmuch as the Arbitrator had not yet resolved the issue of attorney fees and costs, and (2) Plaintiffs' appeal to the CIA-BB was yet pending. [Doc. 249]. On May 19, 2023, Defendants advised that the Arbitrator entered his decision awarding Defendants $978,657.47 in attorney fees and costs (hereinafter, the "Costs Award"), $250,354.00 of which was designated "Share of [A]rbitrator's professional fees." [Doc. 251].

On May 23, 2023, the case closed effective June 5, 2023, unless the parties earlier showed cause in opposition. [Doc. 252].  On June 2, 2023, Defendants jointly moved to reinstate the case to confirm, recognize, and enforce the Final and Costs Awards (together, the "Final Arbitration Award"). [Docs. 253, 254].

---

[2] The CIA-BB adjudicated the appeal via a September 21, 2022, letter sent by electronic-mail. The adjudication was not filed herein until January 18, 2023. [Doc. 250].

## II.

### A.     *The Stay*

This action arises under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (hereinafter, the "New York Convention"). The New York Convention is an international treaty aimed at "encourag[ing] the recognition and enforcement of commercial arbitration agreements in international contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The United States acceded to the New York Convention on September 30, 1970, *see* 21 U.S.T. 2517, and Congress that same year enacted the implementing statute, namely, Chapter Two of the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 201–08.

Inasmuch as Plaintiffs' appeal to the CIA-BB has been fully adjudicated, the Arbitrator has rendered a decision on the award of attorney fees and costs, and a final arbitral award has been entered, Defendants' joint motions to reinstate this case to the active docket and confirm the Final Arbitration Award are ripe for adjudication. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the [New York] Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.").

Accordingly, the Court **LIFTS** the stay, and **REINSTATES** this case to the active docket.

### B.     *Enforcement of Final Arbitration Award*

Section 203 of the FAA provides district courts with original jurisdiction over

actions "falling under the [New York] Convention." 9 U.S.C. § 203. The New York Convention applies to "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought" and to "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." 21 U.S.T. at 2519, art. I(1); *see also* 9 U.S.C. § 202 (actions or proceedings that "fall[]" under the [New York] Convention" include "arbitration agreement[s] or arbitral award[s] arising out of a legal relationship, whether contractual or not, which is considered as commercial" between any parties, unless both parties are citizens of the United States and "that relationship involves [neither] property located abroad, [nor] envisages performance or enforcement abroad, [n]or has some other reasonable relation with one or more foreign states"). An arbitral award is "made" in the location of the "arbitral seat," which is "the jurisdiction designated by the parties or by an entity empowered to do so on their behalf to be the juridical home of the arbitration." Restatement (Third) of the U.S. L. of Int'l Com. & Inv.-State Arb. §§ 1.1(dd), (oo), cmt. dd (Am. L. Inst. 2023).

The parties agreed arbitration would occur in Bermuda. Additionally, they agreed to proceed with a single arbitrator appointed by the Appointment Committee of the CIA-BB. They additionally concurred that "the Bermuda International Conciliation and Arbitration Act 1993 and the UNCITRAL Arbitration Rules presently in force" would govern the proceedings. [Doc. 68 Ex. 3 at 6 ¶ 13]. Defendants now seek enforcement of the arbitral award in this District following the Bermuda proceedings. The instant action is thus covered under the New York Convention and Chapter 2 of the FAA.

Under the New York Convention, the process of reducing a foreign arbitral award to a judgment is referred to as "recognition and enforcement." 21 U.S.T. at 2517–20, arts. III, IV, V. "Recognition" is the determination that an arbitral award is "binding"; "enforcement" is the

reduction of a foreign arbitral award to a judgment. Restatement (Third) of the U.S. L. of Int'l Com. & Inv.-State Arb. §§ 1.1(nn), (m), cmt. m (Am. L. Inst 2023). Chapter 2 of the FAA implements this scheme through Section 207, which provides, "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207.

Federal courts generally divide arbitration actions subject to the New York Convention into two stages: (1) the "arbitration-enforcement" stage, "when a district court is considering an action or motion to refer the parties to arbitration"; and (2) the "award-enforcement" stage, which occurs "after an arbitration award has been made and the court is considering whether to recognize and enforce [that] award." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 372 (4th Cir. 2012) (internal quotation marks omitted) (quoting *Lindo v. NCL (Bahamas), Ltd.*, 652 F.2d 1257, 1277–80 (11th Cir. 2011)); *see also* 9 U.S.C. § 206 (actions compelling arbitration); 9 U.S.C. § 207 (actions to confirm an arbitration award). Based upon the foregoing discussion, this matter has progressed to the award-enforcement stage.

As noted, the New York Convention contemplates an arbitral award may be entered in one country but confirmed in another. 21 U.S.T. at 2517, 2520, arts. I, V. Courts refer to these countries, respectively, as having primary and secondary jurisdiction. *See, e.g.*, *Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 445 (10th Cir. 2022); *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 (2d Cir. 2022); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Dem. Rep.*, 864 F.3d 172, 176 (2d Cir. 2017); *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir.

2007); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004).

The New York Convention contemplates that a country with primary jurisdiction "will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (citing 21 U.S.T. at 2520, art. V(1)(e) (the award may be "set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made")). Bermuda is the primary jurisdiction inasmuch as the parties agreed to arbitrate there. [*See* Doc. 68 Ex. 3 at 6 ¶ 13.]

All other signatory states have "secondary jurisdiction" and may refuse to enforce the award only on the grounds explicitly set forth in Article V of the New York Convention. *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) (citing *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23 ("[T]he [New York] Convention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the [New York] Convention.")); *see also* 21 U.S.T. at 2520, art. V(2)(b) ("Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . the recognition or enforcement of the award would be contrary to the public policy of that country."); 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention.").

The Court here exercises secondary jurisdiction with respect to the Bermudian arbitral award. Confirmation may thus only be denied if one of the seven grounds for Article V refusal applies. The seven grounds are:

[1.] The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

[2.] The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

[3.] The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

[4.] The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

[5.] The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made[; or]

. . .

[6.] The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

[7.] The recognition or enforcement of the award would be contrary to the public policy of that country.

21 U.S.T. at 2520, art. V; *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638 (1985); *AgAO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd.*, 404 F. App'x 793, 797 (4th Cir. 2010).

Plaintiffs rely solely upon ground seven, contending the Court should not recognize

and enforce the Final Arbitration Award because Mr. Duncan's failure to disclose a potential conflict of interest violates public policy.[3] [Doc. 257 at 8–15].

It bears noting at the outset how narrow the public-policy exception is. Multiple courts have observed it only applies "in clear-cut cases" where "enforcement would violate the forum state's most basic notions of morality and justice." *TermoRio*, 487 F.3d at 938 (internal quotation marks omitted). The United States Court of Appeals for the Fifth Circuit approvingly quoted its sister Circuit as follows: "'The general pro-enforcement bias informing the convention . . . points to a narrow reading of the public policy defense.'" *Karaha Bodas*, 364 F.3d at 306 (5th Cir. 2004) (quoting *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 974, 976 (2d Cir. 1974)); *see also id.* ("Erroneous legal reasoning or misapplication of law is generally not a violation of public policy within the meaning of the New York Convention."). Defendants nevertheless assert Plaintiffs waived any challenge to disclosure or partiality by the arbitrator in failing to appeal the CIA-BB's decision to the Bermuda Supreme Court. [Doc. 260 at 4–5].

The Bermuda International Conciliation and Arbitration Act 1993 ("1993 Act") adopts as law the UNCITRAL Model Law on International Commercial Arbitration ("Model Law"). The 1993 Act restates Bermuda's position on the recognition and enforcement of foreign

---

[3] To the extent Plaintiffs seek vacatur of the Final Arbitration Award, *see* [Doc. 257 at 11, 15], a party seeking to avoid enforcement of a foreign arbitration award subject to the New York Convention is limited to the seven defenses outlined in Article V. *See* 21 U.S.T. at 2520, art. V ("[r]ecognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if the party furnishes to the competent authority where the recognition and enforcement is sought, proof that [one of the exceptions to recognition applies]"). The New York Convention regulates only two types of proceedings: (1) for an order confirming an arbitration award (9 U.S.C. § 207), and (2) for an order compelling arbitration pursuant to an arbitration agreement (9 U.S.C. § 206). It contains no provision concerning vacatur actions. Accordingly, there is nothing within the applicable statutory framework that would permit the Court to vacate the Final Arbitration Award.

10

arbitral awards under the New York Convention. *See* 1993 Act § 2 (defining "Model Law" to mean "the UNCITRAL Model Law on International Commercial Arbitration adopted by the United Nations Commission on International Trade Law on 21 June 1985"); *Id.* § 23 ("[T]he Model Law has the force of law in Bermuda."). The 1993 Act appends the Model Law in Schedule 2.

Article 12(2) of the Model Law provides as follows respecting the challenge to an arbitrator:

> An arbitrator may be challenged only if circumstances exist that give rise to justifiable doubts as to his impartiality or independence, or if he does not possess qualifications agreed to by the parties. A party may challenge an arbitrator appointed by him, or in whose appointment he has participated, only for reasons of which he becomes aware after the appointment has been made.

Model Law art. 12(2).  Plaintiffs appear to have been aware of, and complied with, this provision. They appear to have then proceeded in accordance with Article 13(2) of the Model Law which governed their type of challenge:

> Failing such agreement, a party intends to challenge an arbitrator shall, within fifteen days after becoming aware of the constitution of the arbitral tribunal or after becoming aware of any circumstance referred to in article 12(2), *send a written statement of the reasons for the challenge to the arbitral tribunal*. Unless the challenged arbitrator withdraws from his office or the other party agrees to the challenge, the arbitral tribunal shall decide on the challenge.

*Id.* 13(2) (emphasis added).

Having availed themselves of the Model Law's review provisions to that point, however, Plaintiffs inexplicably appear -- perhaps for strategic or other insufficient reasons -- to have defaulted on the Model Law's exclusive provision for seeking review of the CIA-BB's adverse decision:

> (3) If a challenge under . . . the procedure of paragraph (2) . . . is not successful, the challenging party may request, within thirty days after having received notice of the decision rejecting the challenge, the court or other authority specified in article 6 to decide on the challenge, which decision shall be subject to no appeal . . . .

*Id.* 13(3) (emphasis added).[4] And that deviation -- under no less authority than Article 4 of the

Model Law -- is fatal:

> A party who knows that any provision of this Law from which the parties may
> derogate . . . has not been complied with and yet proceeds with the arbitration
> without stating his objection to such non-compliance without undue delay *or, if a*
> *time-limit is provided therefor, within such period of time, shall be deemed to have*
> *waived his right to object.*

Model Law art. 4 (emphasis added); Jay E. Grenig, International Commercial Arbitration § 9:14

(2023) ("Failure to raise an objection as soon as a party has knowledge of it may result in a waiver

of the objection.") (citing ICDR Arbitration Rules art. 25; ICC Rules of Arbitration art. 33;

UNCITRAL Arbitration Rules art. 30; Model Law art. 4). Moreover, on June 8, 2022, the CIA-

BB notified the parties of their right to appeal its ultimate decision on Plaintiffs' challenge to Mr.

Duncan by applying to the Bermuda Supreme Court. [Doc. 260 at 5]. They neglected to act within

the prescribed 30-day period.

It is thus now difficult for Plaintiffs to plausibly assert a public-policy challenge

when they thought so little of the matter that they defaulted on raising it with the ultimate

Bermudian adjudicator. Frankly, the choice smacks of gamesmanship, namely, veering off from

Bermuda midstream -- and the impending finality of the Bermuda Supreme Court's ruling -- after

having lost the challenge at the two earlier levels of review. Irrespective of any such motivation,

however, Plaintiffs' omission unquestionably forecloses their public policy defense.

If not foreclosed, Plaintiffs have conclusively failed to offer proof of -- much less

prejudice resulting from -- the Arbitrator's perceived partiality. Frankly, the putative conflict of

---

[4] Section 25(a)(1) of the 1993 Act lists the "courts that are competent to perform the
functions referred to in Article 6 of the Model Law" as follows: "[F]or the purposes of Article[]. .
. 13(3) . . . of the Model Law, the [Bermuda] Supreme Court and there is no right of appeal from
a decision of that court . . . ." *Id.*

interest cuts in multiple directions under the circumstances. The Arbitrator could have been motivated by (1) a desire to simply bring justice, (2) an animus toward the two lawyers allegedly adverse to him in pending litigation, or (3) a desire to curry the favor of those same two lawyers. Given how narrowly the exception is construed, these alternatives -- whether in whole, part, or mixed -- do not a public-policy challenge make.

### III.

Based upon the foregoing, the Court **GRANTS** Defendants' Joint Motion to Confirm, Recognize, and Enforce Arbitration Awards [**Doc. 254**].

The Clerk is **DIRECTED** to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER:        March 18, 2024

Frank W. Volk
United States District Judge